PJS:WAB



FILED
NOV 2 0 2013
PER _____
HARRISBURG, PA   DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 1:13-CR- 265 |
| | ) (Judge CALDWELL ) |
| v. | ) |
| | ) |
| DANNY L. ROBERTSON | ) |

## INDICTMENT

### A. INTRODUCTION

At all times material to this Indictment:

1. The pari-mutuel wagering system is used in gambling on sporting events of relatively short duration in which participants finish in a ranked order, including thoroughbred horse races. The pari-mutuel wagering system on races is a betting system in which the winners divided the total amount wagered by all bettors, after deducting management expenses and taxes, in proportion to the sums they had wagered individually and with regard to the odds assigned to particular outcomes.

2. The transmittal, re-transmittal, reception and rebroadcast of television or radio signals, by satellite or other electrical or electronic means, of thoroughbred horse races which were occurring live at an in-state location to one or more out-of-state locations, or the receiving at an in-state location of events which were occurring live at an out-of-state location, known as simulcasting, allows pari-mutuel wagering by bettors who could bet on races without actually being present to observe them in person at facilities outside of the state where the race was occurring live. The simulcasting of races also involves the transmission of pari-mutuel wagering information to a central site, so that all bettors wherever they were located could participate in the same pari-mutuel betting pool.

3. Live thoroughbred horse races take place at various venues within the United States of America. These venues included Penn National Racetrack which is located in Grantville, PA within the Middle District of Pennsylvania.

4. Penn National Racetrack is licensed by the Commonwealth of Pennsylvania to conduct live thoroughbred horse racing and to offer pari-mutuel wagering at its facility in Grantville, PA. These live

thoroughbred horse races are simulcast to various other locations, including locations outside the Commonwealth of Pennsylvania, to allow off-track pari-mutuel wagering on these races. Thoroughbred races run at Penn National Racetrack are simulcast on any given day to approximately 116 locations including sites within the Commonwealth of Pennsylvania, sites outside the Commonwealth of Pennsylvania, and sites outside of the United States.

5. Members of the betting public who place wagers on thoroughbred horse races expect that the riders will give their best effort in every race and that every horse entered in every race will not be racing with a foreign substance in it that has been administered in violation of racing rules and regulations. Members of the betting public also expect that the information provided to them by Penn National Racetrack such as the correct owner(s) of the horse, trainer, past performances and recent workout times for the horses is accurate. This information is used to assist the individual bettor to make an informed choice when selecting a horse or horses to wager on in any given race. This information is contained in an official program prepared for each racing day.

6. These laws of the Commonwealth of Pennsylvania, and the various rules and regulations of the Commonwealth of Pennsylvania's Department of Agriculture's Racing Commission (Commission) provide, among other things, that:

> (a) The term "racing official" is defined in 58 Pa. Code §163.332 and includes, among others, a racing secretary;
>
> (b) The racing secretary shall discharge the duties of his office express or implied as required by 58 Pa. Code §§ 163.391 – 163.398;
>
> (c) The racing secretary shall compile an official program for each racing day, which states the time fixed for the first race; the owner, trainer and jockey of each horse; each owner's racing colors; the weight assigned to each horse; his number and post position, color, sex, age and breeding. The program may show other pertinent data such as the horse past performance and its most recent workout time;
>
> (d) A horse which has not started for a period of 30 days or more is ineligible to race until it has completed a timed workout satisfactory to the stewards prior to the day of the race in which it is entered. A workout following the entry of a horse shall appear on the official daily racing program;
>
> (e) A stewards is a "racing official" as defined in 58 Pa. Code §163.332;
>
> (h) It is a crime in the Commonwealth of Pennsylvania punishable by up to 5 years imprisonment for a person acting with the intent to prevent a publicly exhibited contest from being conducted in accordance with the rules and usages purporting to govern it to tamper with any person, animal or thing. 18 Pa.C.S. §4109.

7. Equibase Company, LLC (Equibase), a general partnership between The Jockey Club and the Thoroughbred Racing Associations of North America (TRA) based in Lexington, KY, was formed in 1990 to establish a single thoroughbred-industry-owned database of racing information. Equibase is the official supplier of racing information and statistics to America's best Racing, Breeders Cup, Daily Racing Form, ESPN, MSNBC, NTRA, The Jockey Club, TRA, TVG and Xpress bet.

8. Equibase offers information on all aspects of thoroughbred racing on its internet website to include, among other things, a horse's past performances and workout times.

9. Thoroughbred racetracks, such as Penn National Racetrack, submit information including a horse's workout time to Equibase for posting on its website and publication so as to inform the betting public of important information regarding horses entered in races.

10. At all times pertinent to this Indictment **DANNY L. ROBERTSON**, Defendant herein, was employed by Hollywood Casino and Racetrack (Penn National), which is a subsidiary of Penn National Gaming, Inc., as a clocker whose duties and responsibilities include:

(a) to be present at Penn National Racetrack during training hours, which is open for training, to identify each horse working out and to accurately record the distances and times of each horse's workout;

(b) to each day prepare a list of workouts that describes the names of each horse which worked along with the distance and time of each horse's workout;

(c) to deliver a copy of the list of workouts to the stewards and the racing secretary at the conclusion of training hours; and

(d) to transmit to Equibase by wire the daily workouts for the horses including the workout times for the horses.

### B. THE SCHEME AND ARTIFICE TO DEFRAUD

11. It was a part of the scheme and artifice to defraud that the defendant, **DANNY L. ROBERTSON**, would accept money from trainers whose identities are known and unknown to the grand jury to provide false workout times for the trainers' horses by entering times that were faster than or slower than the horse actually worked, or to enter a completely false workout time for a horse that did not workout at all at the track.

12. It was a further part of the scheme and artifice to defraud that the defendant, **DANNY L. ROBERTSON**, would provide the incorrect

workout times to the racing officials knowing that those times would be placed in the official daily racing program for the betting public.

13.   It was a further part of the scheme and artifice to defraud that the defendant, **DANNY L. ROBERTSON**, would use his computer to transmit by wire the fraudulent workout times to Equibase knowing those times would be made available to the betting public worldwide on the Equibase website and provided by Equibase to numerous publications, thereby providing the betting public with inaccurate or false information on a horse's workout time and nationally affecting the betting public's ability to make informed decisions on wagering.

**THE GRAND JURY CHARGES THAT:**

<u>COUNT I</u>
(18 U.S.C. § 1343 – Wire Fraud)

All of the preceding paragraphs of Count I of this Indictment are incorporated in this Count as some but not all of the overt acts committed in furtherance of the conspiracy charged in this Count of the Indictment.

From on or about January 1, 2008 up to and including October 17, 2013, in the Middle District of Pennsylvania and elsewhere, the defendant,

**DANNY L. ROBERTSON,**

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses and representations and to deprive Hollywood Casino and Racetrack of its right to honest services, did transmit and cause to be transmitted by wire, radio and television communication in interstate and foreign commerce any writings, signs, signals pictures and sounds for the purpose of executing such scheme and artifice as described herein.

All in violation of Title 18, United States Code, Sections 1349 and 1343.

**THE GRAND JURY FURTHER CHARGES THAT:**

## COUNT II

(18 U.S.C. § 1952 (a)(3) – Use of Interstate Facility to Promote Gambling in Violation of State Law)

All of the preceding paragraphs of Count I of this Indictment are incorporated in this Count of the Indictment as if fully restated herein.

From on or about January 1, 2008 up to and including October 17, 2013, in the Middle District of Pennsylvania and elsewhere, the defendant,

**DANNY L. ROBERTSON,**

did intentionally and knowingly unlawfully use a facility in interstate and foreign commerce, that is, the simulcast broadcasting by wire and television of races at Penn National Racetrack and the transmission by wire of information to Equibase, to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of a business enterprise involving a violation of the laws of the Commonwealth of Pennsylvania, that is, the rigging and attempted rigging of a publicly exhibited contest in violation 18 Pa.C.S. §4109 as well as the Commonwealth of Pennsylvania's commercial; bribery

statute (18 Pa.C.S. § 4108), and thereafter performed and attempted to perform acts as described therein.

All in violation of Title 18, United States Code, Section 1952 (a) (3).

A TRUE BILL

███████████
~~FOREPERSON~~

11/20/13
DATE

_____
PETER J. SMITH
UNITED STATES ATTORNEY